STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-1399

NORA LEE MILLER PRINCE AND ANCEL JAMES MILLER

VERSUS

PALERMO LAND COMPANY, INC.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 97-5297, DIVISION "G"
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Michael G. Sullivan, Billy H. Ezell, and James T. Genovese,
Judges.

AFFIRMED.

Oliver "Jackson" Schrumpf
3801 Maplewood Drive
Sulphur, Louisiana 70663
(337) 625-9077
COUNSEL FOR DEFENDANT/APPELLANT:
        Palermo Land Company, Inc.


C. A. Guilbeaux
1215 Common Street
Lake Charles, Louisiana 70601
(337) 433-7858
COUNSEL FOR PLAINTIFFS/APPELLEES:
        Nora Lee Miller Prince and
        Ancel James Miller (deceased)

**GENOVESE, Judge.**

Defendant, Palermo Land Company, Inc. (Palermo), appeals the judgment of the trial court declaring that the Plaintiffs, Nora Lee Miller Prince and her brother, the late Ancel James Miller (the Millers), are the owners of the property at issue through acquisitive prescription of thirty years. For the following reasons, we affirm.

## FACTS

The property at issue is located north of other property owned by the Millers and is described in the record of these proceedings as:

> The West Half (W 1/2) of the Northwest Quarter of the Southwest Quarter (NW 1/4 of SW 1/4) of Section 1, Township 10 South, Range 12 West, situated in the Parish of Calcasieu, State of Louisiana, containing 20 acres, more or less.

The property at issue was purchased by Palermo's ancestors in title on June 24, 1963, at a tax sale. Palermo asserts that it interrupted the Millers' alleged possession and prescription by virtue of its purchase of said property at the tax sale in 1963 and that it has maintained its ownership by paying the property taxes since 1964.

The Millers claim that their ancestors began using the property at issue sometime in the 1940s. The Millers claim that their family has used the property for more than thirty years, raising cattle and growing crops. The property at issue was listed in the succession of the Millers' father, Ancel Onelect Miller, in 1993. The 1993 judgment of possession declared that the Millers, Nora Lee Miller Prince and the late Ancel James Miller, received ownership of their father's interest in the property at issue, subject to the usufruct of his surviving spouse, Rena Quebedeaux Miller. Also in 1993, Rena Quebedeaux Miller donated her alleged ownership interest in this property to the Millers, Nora Lee Miller Prince and the late Ancel James Miller. The property at issue was then partitioned between the Millers.

1

Sometime around 1994, the late Ancel James Miller erected a fence on this property.

On July 18, 1997, the Millers filed a petition for declaratory judgment seeking to have themselves declared to be the owners of the property at issue pursuant to thirty years acquisitive prescription. The Millers contend that more than thirty years have elapsed since Palermo purchased said property at tax sale and that they have continued in physical possession of said property in excess of thirty years prior to their filing of this lawsuit.

A bench trial in this matter was set for February 4, 2005. At said hearing, the parties presented their evidence for the court's consideration and were allowed to submit post-trial briefs for the court's consideration, after which the trial court took the matter under advisement. Subsequently, the trial court issued written reasons for judgment finding that the Millers had established possession of the property pursuant to thirty years acquisitive prescription. The trial court wrote (citations omitted), in pertinent part:

> The variety of physical or corporeal possession necessary in a particular occurrence will be determined by the nature of the land. The nature of the land involved is the chief consideration as to what acts of possession are sufficient.
> Types of activities indicative of possession vary, but with rural property, the growing of crops, cattle grazing and fencing have been held as examples of possession sufficient to prove acquisitive prescription. Furthermore, adverse possessors can acquire title by prescription by engaging in activities such as maintaining fences, paying stamps on transactions, farming, carrying out drainage projects, and paying taxes.
> However, payment of taxes alone is not sufficient indicia of possession for attainment of property under 30 year acquisitive prescription, it is much more effective in 10 year prescription cases. Paying of taxes is not sufficient in itself to support possession of or to show title to property, but taken in consideration with other facts, tends to support [a] claim of possession as owner. In fact, paying taxes was not possession necessary for 30 year prescription.
> Here, in depositions by the Plaintiffs, Nora Prince and Ancel Miller, there was testimony that the property in question was used in a

manner fitting its[] status as rural property for the purpose of acquisitive prescription. In their depositions, the [P]laintiffs testified to treating the land as an owner in open possession by ejecting trespassers from the tract, using the tract for recreation, farming on the tract, and using the tract as pasture for cattle, or fencing the land.

The [D]efendants, by their own admission, have never held corporal possession of the tract. According [to] the depositions [], he [Joseph R. Palermo, Jr.] had only been on the land once or twice. Same for the other ancestors in title, only flew over the tract in a plane, and allegedly granted an oral lease to graze cattle, that was seemingly contradicted by an affidavit by an individual . . . .

On July 26, 2005, the trial court signed a judgment granting the Millers' petition for declaratory judgment, declaring them to be the owners of the property at issue through acquisitive prescription of thirty years.

## ASSIGNMENTS OF ERROR

Palermo appeals and asserts the following assignments of error: (1) the trial court erred in failing to hold the 1963 tax sale constituted an admission against interest or an interruption of the claim of possession of the property by the Millers; (2) the trial court erred in failing to conclude that the offer by the Millers' ancestor to purchase the tract from Palermo's ancestor after the tax sale constituted an acknowledgment or admission of ownership in another person and an interruption in the Millers' possession; (3) the trial court erred in failing to note the discrepancy between the affidavits of possession and the deposition testimony admitting that the Millers did not "live on" the twenty-acre disputed tract; (4) the trial court erred in admitting the affidavits of deceased persons over objections, including violation of the right to cross-examine witnesses; (5) the trial court erred in failing to recognize that the granting of oil, gas, and mineral leases by Palermo, combined with payment of property taxes, interrupted acquisitive prescription; (6) the trial court erred in failing to grant Palermo's exception of failure to join a necessary party; and (7) the

trial court erred in failing to require the Millers to substitute parties.

Palermo basically asserts that the trial court erred in finding that the Millers satisfied the requirements for proving ownership of the property at issue through acquisitive prescription of thirty years.

Possession of an immovable is the detention or enjoyment of a corporeal thing. *See* La.Civ.Code art. 3421. "Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." La.Civ.Code art. 3425. Louisiana Civil Code Article 3486 provides that ownership of an immovable "may be acquired by the prescription of thirty years without the need of just title or possession in good faith." Possession occurs when one takes corporeal possession of the thing and intends to possess it as the owner. *See* La.Civ.Code art. 3424. To acquire a thing by prescription, possession must be commenced by corporeal possession, or civil possession preceded by corporeal possession; however, the possession must be continuous, uninterrupted, peaceable, public, and unequivocal. La.Civ.Code art. 3476. "Actual corporeal possession is necessary to commence thirty years acquisitive prescription, and external and public signs are required to keep possession running." *Phillips v. Fisher*, 93-928, p. 4 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, 1308, *writ denied*, 94-813 (La. 5/6/94), 637 So.2d 1056.

"The party asserting acquisitive prescription bears the burden of proving all the facts that are essential to support it." *Id.* at 1307. A trial court's decision on whether a party has possessed property sufficient to prove thirty year acquisitive prescription is a factual determination and cannot be reversed on appeal unless it is manifestly erroneous or clearly wrong. *Id.* Furthermore, a trial court is given great deference, and its findings are virtually never manifestly erroneous or clearly wrong when based

4

upon determinations of the credibility of witnesses. *Id.* (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)).

The Millers contend that they have maintained physical possession of said property more than thirty years prior to their filing suit and that more than thirty years have elapsed since Palermo purchased said property at tax sale back in 1963. Plaintiff Nora Lee Miller Prince testified in her deposition that she has personally performed acts of possession on the property at issue most of her life. She testified that she often rode the fence lines on horses, picnicked all over the property, and swam in the canal on the property as a child. She testified that her family used the property at issue to graze their cattle and had even cut a canal levee in order to form a "crossover" for their cattle to get to the property at issue, which is directly north of the property on which the Millers live. Her father often rode around on the property at issue looking for cows that had crossed the canal and given birth. She testified that her family has always controlled the use of the property and that they ran trespassers off the property and permitted others to hunt or swim on the property.

Plaintiff Ancel James Miller, now deceased, also testified in his deposition about his family's use of the property at issue as being constant. He testified that said property was used by his family to graze cattle, farm hay, and he personally fished, swam, hunted, rode four-wheelers, and baled hay on the property in question since he was a child. Finally, Mr. Miller testified that he erected a fence on the property in question in 1994 in order to divide the property equally between himself and his sister, Nora.

The property at issue was purchased by Joseph Palermo, Sr. in 1963 at tax sale and subsequently transferred to Palermo Land Company, Inc. Since 1963, Palermo

5

Land Company, Inc., and its ancestors in title, have paid the taxes on the property in question. Palermo asserts that the Millers' father, Ancel Onelect Miller, was aware of their purchase of the property, and argues that said acknowledgment constitutes an interruption of the Millers' alleged possession.

Joseph Palermo, Jr. (Joseph, Jr.), president of Palermo Land Company, Inc., testified in his deposition that sometime after his father, Joseph Palermo, Sr., purchased the property in 1963, that Ancel Onelect Miller approached his father offering to purchase the property; however, the property was never sold to Ancel Onelect Miller. Joseph, Jr. testified that he had no knowledge of the Millers' use of the property and that he never saw any cows, crops, signs, or activity on the property as alleged by the Millers. Joseph, Jr. testified that since 1963, Palermo has executed several oil, gas, and mineral leases on the property in question. Joseph, Jr. also testified that he first went onto the property in the mid-1970s and has since been on the property four or five times, with the last time being in 1994. He also testified that he flew over the property "a bunch of times."

Anthony Palermo, Sr. (Anthony), secretary and treasurer of Palermo Land Company, Inc., testified in his deposition that since his father purchased the property at issue, he personally hunted rabbit and squirrel on the property. Anthony testified that in 1986, the property at issue was leased to Edward Burl Baty, a cattle farmer, through a verbal lease; however, Anthony did not know whether Mr. Baty actually grazed any cattle on the property.

Palermo argues that its purchase of the property at tax sale, its subsequent payments of property taxes, and its execution of several oil, gas, and mineral leases on the property in question constitute an interruption of the Millers' claim to physical

6

or corporeal possession of the property in question. The Millers, however, contend that Palermo's actions are merely acts of constructive possession and, therefore, do not negate their physical or corporeal possession. The Millers assert that even if Palermo's acts of constructive possession constituted an interruption of their physical or corporeal possession, said interruption is considered to have never occurred because the Millers recovered possession within the one-year period as set forth in La.Civ.Code art. 3465.

The trial court found that Palermo's purchase of the property, execution of mineral leases, and payment of property taxes was not sufficient to interrupt prescription. It further found that the Millers continued to exercise control over the property in question.

Louisiana Civil Code Article 3465 provides that "[a]cquisitive prescription is interrupted when possession is lost. The interruption is considered never to have occurred if the possessor recovers possession within one year or if he recovers possession later by virtue of an action brought within the year." Louisiana Civil Code Article 3466 provides that "[i]f prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption."

In *Brooking v. Vegas*, 03-1114 (La.App. 3 Cir. 2/4/04), 866 So.2d 370, *writ denied*, 04-577 (La. 4/30/04), 872 So.2d 491, this court held that the plaintiffs removal of fence posts was sufficient to interrupt the defendants' possession; however, because the defendants continued to exercise acts of possession in the area where the fence once existed, e.g., mowing the grass, the trial court held that the defendants had recovered possession of the property within the one-year time frame required by La.Civ.Code art. 3465.

7

In this case, the Millers contend that they have maintained open possession with the intent to possess as owners since the 1940s, before, during, and after each and every constructive act of possession relied upon by Palermo; therefore, an interruption of prescription never occurred. We agree. We find the evidence supports the conclusion that the Millers' continued acts of possession occurred within the one-year time frame required by La.Civ.Code art. 3465; therefore, said acts of possession are sufficient for the Millers to assert a recovery of possession for the purposes of acquisitive prescription.

Aside from the self-serving testimony of its officers, Palermo offered no evidence to counter the Millers' evidence of possession in excess of thirty years. In light of the testimony contained in the record, and giving great deference to the trial court in terms of judging credibility determinations, we find no manifest error in the trial court's judgment. The record supports the trial court's determination that the Millers have carried their burden of proof in support of thirty year acquisitive prescription.

Palermo also argues that the trial court erred in admitting the affidavits of two deceased persons, Ignace Borel and Sidney Kibodeaux, alleging that the affidavits were hearsay and deprived Palermo of the right to cross-examine said witnesses. We agree with the trial court that these affidavits are exceptions to the hearsay rule under La.Code Evid. art. 803(20)[1]. We note the trial court declared "the admission of these

_____

[1]La.Code Evid.art. 803(20) provides:

> **Reputation concerning boundaries or general history.** Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community, and reputation as to events of general history important to the community or state or nation in which located.

8

affidavits are merely supporting evidence, not the basis of the court's decision to rule for a particular party." We, therefore, find Palermo's objection to the admission of these two affidavits to be without merit.

Finally, Palermo contends that the trial court erred in denying its exceptions of nonjoinder of an indispensable party and failure to substitute parties. Palermo asserts that these exceptions were raised in its post-trial memorandum; however, our review of the record indicates that Palermo's post-trial memorandum was filed on December 20, 2005, as an attachment to Palermo's motion and order to supplement record on appeal. Palermo's motion states:

> The objections and exceptions made by [D]efendant, Palermo Land Company, were to be made in the Post-Trial Brief as referenced on page 462-463 of the transcript. The Post-Trial Brief was not filed in the proceeding of the Fourteenth Judicial District Court. Appellant [Palermo] wants to make note in the appellate record of this proceeding that objections and exceptions were raised in the trial court.

The trial court issued its written reasons for judgment on April 27, 2005. Contrary to Palermo's assertion that its "objections and exceptions were raised in the trial court" the transcript of the February 4, 2005 hearing reveals that Palermo's counsel declared "I am reserving any objections to a brief, post-trial brief." Because our review of the record reveals that the Palermo's post-trial memorandum, containing Palermo's objections and exception, was not filed into the record of these proceedings until December 20, 2005, we find Palermo's assignment of error regarding the trial court's failure to require the Millers to substitute parties to be without merit. We do note, however, that counsel for the Millers asserts that she was actually the one who brought the death of the late Ancel James Miller to the attention of Palermo's counsel; however, counsel for Palermo agreed to continue with the trial, without any substitution, and did not file a formal exception for failure to substitute parties.

9

Therefore, we find Palermo waived its objection to the Millers' failure to substitute parties prior to trial.

Unlike the previously discussed dilatory exception of failure to substitute parties, Palermo's peremptory exception pleading nonjoinder of an indispensable party may be noticed by an appellate court on its own motion. *See* La.Code Civ.P. art. 927(B). Palermo contends that the Millers are asserting possession of property owned by the neighboring property owners, the Lawtons. The Millers dispute this assertion; therefore, we find nothing for this court to review on the issue of whether the Millers are seeking to establish possession of any land other than the property purchased by Palermo at tax sale in 1963.

As enunciated in *Phillips*, 634 So.2d 1305, a trial court's decision on whether a party has possessed property sufficient to prove thirty year acquisitive prescription is a factual determination and cannot be reversed on appeal unless it is manifestly erroneous or clearly wrong. Considering the factual and credibility determinations made by the trial court in this case, we find no manifest error.

### DECREE

For the reasons set forth above, the judgment of the trial court granting Plaintiffs' petition for declaratory judgment declaring them to be the owners of the property at issue through acquisitive prescription of thirty years is affirmed. Costs of this appeal are assessed against Defendant-Appellant, Palermo Land Company, Inc.

**AFFIRMED.**