NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1087

CAFFERY ALEXANDER

VERSUS

MICHAEL RENE MADDOX, ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 66857
HONORABLE KEITH RAYNE JULES COMEAUX, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Alfred Frem Boustany, II
P. O. Box 4626
Lafayette, LA 70502
Telephone: (337) 261-0225
COUNSEL FOR:
     Plaintiff/Appellant - Caffery Alexander

Stanford B. Gauthier, II
1405 West Pinhook Road - Suite 105
Lafayette, LA 70503
Telephone: (337) 234-0099
COUNSEL FOR:
     Defendants/Appellees - Michael Rene Maddox and Paul Fred Champagne

**Thibodeaux, Chief Judge.**

Plaintiff, Caffery Alexander (Mr. Alexander), appeals the judgment of the trial court awarding tracts of land to the defendants, Michael Rene Maddox (Mr. Maddox) and Paul Fred Champagne (Mr. Champagne), because Mr. Champagne and Mr. Maddox and their ancestors had open, uninterrupted possession of the land within visible boundaries for thirty years or more, thereby satisfying all of the legal requirements for acquisitive prescription. For the following reasons, we affirm the judgment of the trial court.

I.

**ISSUE**

Mr. Alexander presents three questions for review by this Court:

1. Did the district court commit manifest error by awarding specific tracts of land to Mr. Champagne and Mr. Maddox, finding that they had met all of the elements required to acquire immovable property by acquisitive prescription?

2. Did the trial court commit manifest error in choosing the plat of surveyor Mohammad Borazjani to set the boundaries between the two parties?

3. Did the trial court commit manifest error by ruling that Mr. Alexander had not met the elements required to reacquire the property in question by way of acquisitive prescription of ten years?

II.

**FACTS**

Mr. Alexander and Mr. Maddox own neighboring tracts of land in St. Martin Parish. Their dispute involves a tract of land that lies on the boundary between their two properties.

Mr. Champagne, his ancestors, and relatives own the land next to Mr. Alexander's property. Mr. Champagne's father first purchased their property in 1933, and he and his descendants have continuously occupied and used the land since that date. When Mr. Champagne's father purchased the land, he began a dairy farm business there. The cattle were allowed to roam on the land. Mr. Champagne asserts that early on in the business he, his father, and his uncles built a fence around the land in part to keep the cattle from roaming off of their property and from getting into the adjacent coulee. It was also built, he stated, to stake out the boundary of their property. The fence was made with posts and barbed wire and also used existing trees as supports. The disputed tract of land was on the Champagne's side of this fence.

After the dairy business was shut down, the disputed tract, which was treated as part of the Champagne's land, was used by a neighbor for growing soybeans. The farmer paid Mr. Champagne one-sixth of his crop yield as rent for the privilege of farming on the Champagne's land.

In 1970, the Champagnes partitioned their land after the death of their father. A plat of survey was recorded with the partition documents in the St. Martin Parish mortgage records. Mr. Champagne's sister then deeded her portion to her son, Mr. Maddox. Mr. Champagne managed and cared for Mr. Maddox's property, and he used it as if he were the owner. Mr. Champagne lived and worked on the land, while Mr. Maddox lived elsewhere in the state of Louisiana.

Mr. Alexander bought approximately 72.31 acres of land on April 25, 1977. The parcel was described in the deed of sale, which also made reference to a plat of survey completed by surveyor Fred Columb. The cash sale deed was recorded in the official mortgage records of St. Martin Parish on May 19, 1977. However, that

plat of survey was not included with the documents submitted into the parish mortgage records.

In 1988, Mr. Champagne built a crawfish pond and levee on the tract of land at issue. It adjoins Mr. Alexander's property, and had been used by the Champagne's for decades as part of their cattle and farming operations. Mr. Alexander believed that part of the crawfish pond and levee were built on his land, and he asked Mr. Champagne to remove what he believed to be encroachments on his property. Mr. Champagne researched the issue, and felt that he had built his crawfish business on land that his family had been using continuously since 1933. He, therefore, refused to relocate his crawfish business. He asserted that his family owned the land on which it was located.

Mr. Alexander sued both Mr. Champagne and Mr. Maddox. He requested the trial court to declare him the owner of the tract of land in question; to order Mr. Champagne to remove the encroachments onto his land; and, for damages. Mr. Maddox and Mr. Champagne answered the suit by filing a reconventional demand, and a peremptory exception based on the law of acquisitive prescription as they claimed to have had uninterrupted possession of the land as owners within visible boundaries for more than thirty years.

After trial was held on the matter, during which the trial judge personally visited the site of the disputed area and the evidence of possession, the district court issued a judgment granting the exception of acquisitive prescription by more than thirty years of uninterrupted, visible possession without good title to the land. The trial judge had at least five different plats of surveys entered into the record by both parties with which he could set the new boundaries of ownership. The plat of survey the trial judge chose as his guide was prepared by one of the licensed surveyors, but

3

it was not one that either party had been advocating that the judge use. Mr. Alexander filed a motion for new trial which was denied. He then timely filed this appeal.

## III.

## <u>STANDARD OF REVIEW</u>

In this case we are called upon to review the judgment of the district court which determined that Mr. Champagne and Mr. Maddox had satisfied all of the elements required to acquire property to which one does not have clear title by acquisitive prescription. The judgment of a district court determining whether or not the elements of acquisitive prescription have been met is a factual determination, and will not be overturned by a reviewing appellate court absent manifest error. *Lowery v. Hebert*, 04-1399, p. 2 (La.App. 3 Cir. 7/20/05), 909 So.2d 648, 651.

## IV.

## <u>LAW AND DISCUSSION</u>

There is a difference between determining ownership by title, and determining ownership by acquisitive prescription. The elements of acquisitive prescription are encoded into law in the following articles of the Louisiana Civil Code:

Art. 3424. Acquisition of possession

To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing.

Art. 3446. Acquisitive prescription

Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time.

Art. 3476. Attributes of possession

4

The possessor must have corporeal possession, or civil possession preceded by corporeal possession, to acquire a thing by prescription.

The possession must be continuous, uninterrupted, peaceable, public, and unequivocal.

Art. 3486. Immovables; prescription of thirty years

Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith.

Taken together, these Louisiana Civil Code articles require one who claims ownership by acquisitive prescription of thirty years to prove that they have actually physically possessed the immovable property, within specific boundaries, with the intent to possess it as the owner, and such possession must be: continuous, uninterrupted, peaceable, public, and unequivocal. La.Civ.Code arts. 3424, 3446, 3476, 3486.

The party seeking ownership of land by acquisitive prescription bears the burden of proving that he or she has met all of the required elements. *Hooper v. Hooper*, 06-825 (La.App. 3 Cir. 11/2/06), 941 So.2d 726.

**Did the District Court Commit Manifest Error by Awarding Specific
Tracts of Land to Mr. Maddox and Mr. Champagne, Finding
That They Had Met all of the Elements Required to Acquire
Immovable Property by Acquisitive Prescription?**

The tract of land in question sits at the boundary between the properties owned by both parties. Mr. Alexander claims to own it because it was part of the parcel he purchased via cash sale deed in 1977. Mr. Champagne claims to own it because he and his ancestors have continuously possessed it and used it as owners since 1933.

The trial judge was required to determine if ownership had been acquired by acquisitive prescription, not ownership by deed or title. Therefore, he had to

5

examine all of the evidence of ownership presented by those claiming ownership by acquisitive prescription. Plats of surveys are helpful in that determination, but not determinative. For example, the trial judge asked Michael Breaux, one of the licensed surveyors testifying at trial, what he was actually hired by Mr. Alexander to do. Mr. Breaux stated that he was hired by Mr. Alexander after the dispute over the ownership of the tract of land at issue arose to establish boundaries and stake them out. The judge then stated that establishing boundaries and determining ownership were two different issues. The surveyor completely agreed with the trial judge.

While the record contains five plats of survey from five different licensed surveyors, there are also aerial photographs of the properties in question. These photographs are called "Tobins," and they are often used in St. Martin Parish to help determine and establish property ownership.

In this case, the Tobins of the two properties in question taken in December of 1955 show that the land Mr. Champagne claimed to own was cleared, while the land that Mr. Alexander would later purchase was wooded. This corroborated Mr. Champagne's claim that the land had been used for cattle grazing and farming continuously since its purchase in 1933. In fact, Mr. Breaux agreed with that assessment in the following answer to the trial judge's question:

> Trial Judge: "In your experience as a surveyor, both registered or not, when you've reviewed Tobins and seen cleared views, in your opinion, is that a possession?
>
> Expert Witness/Surveyor Breaux: "Yes."

Mr. Champagne urged the court to give great weight to the physical evidence found in a very old tree that sits on the outside border of the disputed tract of land. The tree has bits of barbed wire growing directly through it and around it. Mr. Champagne claims that this tree is evidence of the fence built by himself, his

father, and his uncles in the mid-to-late 1930's that was meant to fence-off the boundaries of their land. Mr. Champagne claims that the fence existed until the early 1980's when Mr. Alexander bulldozed most of the trees on his newly purchased property, thereby destroying the nearly fifty-year old fence. He also asserted that if one extrapolated the direction and line of the fence before it was destroyed, it would have run directly along the outside border of the tract of land in dispute. Mr. Alexander argued that this tree and bits of barbed wire meant nothing, as he had actual title to the land that he cleared.

Again, ownership by acquisitive prescription is not prohibited because another party has title to the land over which one is openly possessing. By the time Mr. Alexander began clearing the trees from his land, Mr. Maddox and Mr. Champagne had already acquired it through adverse possession.

In its written reasons for judgment, the district court found it quite compelling that the boundaries visible in the Tobin photographs seem to correlate exactly to the boundary line represented by the existing remnant of barbed wire in the tree. The trial judge found it "enlightening" that the barbed wire had grown into the tree. To the court, this could only have occurred because the barbed wire fence had been put there many, many years ago and the tree had grown around it.

The trial judge also found the testimony of Mr. Champagne and some of his witnesses most compelling, especially when combined with the physical evidence in the record. Evaluations of the credibility of witnesses cannot be overturned by a reviewing court unless manifest error is found after a review of the record as a whole.

> "The party asserting acquisitive prescription bears the burden of proving all the facts that are essential to support it." *Id*. at 1307. A trial court's decision on whether a party has possessed property sufficient to prove thirty year acquisitive prescription is a factual determination and cannot be reversed on appeal unless it is

> manifestly erroneous or clearly wrong. *Id.* Furthermore, a trial court is given great deference, and its findings are virtually never manifestly erroneous or clearly wrong when based upon determinations of the credibility of witnesses. *Id.*

*Prince v. Palermo Land Co., Inc.*, 05-1399, p. 4-5 (La.App. 3 Cir. 5/3/06), 929 So.2d 831, 834-35 (*quoting Phillips v. Fisher*, 93-928, p. 4 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, 1308, *writ denied*, 94-813 (La. 5/6/94), 637 So.2d 1056, *citing Rosell v. Esco*, 549 So.2d 840 (La.1989)).

Based on all of the evidence and a review of the entire record, it is perfectly reasonable to conclude that Mr. Champagne and Mr. Maddox presented evidence sufficient to meet their burden of proving that all of the elements of ownership by way of acquisitive prescription have been satisfied. The trial judge did not commit manifest error, and the judgment of the trial court declaring Mr. Champagne and Mr. Maddox owners of the disputed tract of land by way of acquisitive prescription is affirmed.

## Did the Trial Court Commit Manifest Error in Choosing the Plat of Surveyor Mohammad Borazjani to Set the Boundaries Between the Two Parties?

All of the five plats of surveys entered into the record were completed by licensed surveyors. Three of the five surveyors testified during the trial, and the trial judge had the opportunity to extensively question them on their own surveys, as well as the surveys prepared by some of the other surveyors.

During questioning of Mr. Breaux, the trial judge questioned whether his survey and the survey on which he based his were correct. This question about the accuracy of these two surveys arose during the following exchange:

> Trial Judge: "You don't know if the original Columb survey that Mr. Columb prepared is correct because you

8

didn't go back to substantiate that the lines he drew were correct?

Expert Witness/Surveyor Breaux: "That's correct. Yes sir."

. . . .

Trial Judge: "But you don't know that the Columb survey was accurate and correct. You assume that he went back and did his research and set the boundaries in the right places but you don't know that, do you?

Expert Witness/Surveyor Breaux: "That's correct."

The Columb survey to which they are referring was prepared in 1971. It was referenced in Mr. Alexander's cash sale deed, but was not recorded in the St. Martin Parish mortgage records so it was not considered official proof of title and boundaries.

The earliest plat of survey in the record was completed by Albert Fuselier in 1970. At that time, the barbed wire fence was still intact and this plat of survey was filed in the parish mortgage records. The most recent survey was completed by surveyor Mohammad Borazjani. This survey was first completed in 2001, and then it was updated in 2004. It was based on Mr. Fuselier's survey, as well as an actual inspection of the property where he used the survey marks in the form of iron rods from the Fuselier survey as a guide.

The survey relied upon by the trial court was properly admitted into evidence. Certainly, a court has the discretion to place appropriate weight on evidentiary matters, has inherent judicial powers, La.Code Civ.P. art. 191, and may grant any relief it deems is equitable and any relief to which a party is entitled, even if that relief is not requested in the pleadings of the party in whose favor judgment is rendered. La.Code Civ.P. art. 862. While neither party had advocated for the Borazjani survey, based on the trial judge's careful review of the evidence in the

9

record, and his questioning of three of the five surveyors, it was not manifest error for him to choose the Borazjani survey to set the boundaries of ownership between the parties.

**Did the Trial Court Commit Manifest Error by Ruling That Alexander Had Not Met the Elements Required to Reacquire the Property in Question by Way of Acquisitive Prescription of Ten Years?**

Mr. Alexander argues that even if Mr. Champagne and Mr. Maddox did acquire the disputed tract of land via acquisitive prescription, he reacquired it back under the same theory of law. He asserts that when he bought the land, tore down the fence, and bulldozed the trees to the former fence line, he was reacquiring the land under Louisiana Civil Code Article 3475. Article 3475 allows one to acquire immovable property if it is possessed for ten years, in good faith, with just title, and it is a thing susceptible of acquisition by prescription.

There are two problems with this argument. The first is that Mr. Alexander did not have clear title to the tract of land in question. As mentioned above, a plat of survey was not recorded with the deed of sale in the official mortgage records of St. Martin Parish. The property description does not describe the exact boundaries of his property. It merely states who his neighboring property owners are, and the fact that it does not mention the Champagnes is a sign of its vagueness. It does not give a physical description of the boundaries. Therefore, Mr. Alexander cannot establish that he has just title to the disputed tract of land, and Louisiana Civil Code Article 3475 cannot avail him in his attempt to reacquire it.

Second, Mr. Alexander did not possess the tract of land for ten years. From the time he purchased the land until the time of trial, Mr. Champagne had been using the land as its owner. It was Mr. Champagne who had authorized the soybean

farmer to use the land, and it was to Mr. Champagne that the farmer paid a real rent in the form of a percentage of his yield for that use. Mr. Champagne then cleared the farmer's fields and built the crawfish pond and levee. Therefore, Mr. Alexander would also not be able to satisfy the requirement of uninterrupted use and possession for ten years.

The trial court did not err in determining that Mr. Alexander had not met the requirements of ownership through acquisitive prescription of ten years.

V.

**CONCLUSION**

Under Louisiana law, a party may acquire ownership to immovable property without having just title or good faith if they corporeally possess the land for thirty years or more, within specific boundaries, with the intent to do so as its owner, and that possession is: continuous, uninterrupted, peaceable, public, and unequivocal. Courts rely on physical evidence of possession, as well as the testimony of witnesses and experts to determine if these elements have been met.

Mr. Champagne proved that he and his family had physical possession of the land between his property and Mr. Alexander's long before Mr. Alexander even purchased the neighboring property. Aerial photographs and remnants of an old boundary fence were reasonably relied upon by the trial judge to prove possession within a specific area with the intent to possess as the owner. The trial judge determined that Mr. Champagne and Mr. Maddox had met their burden of proof, and he granted their exception of acquisitive prescription. This was a reasonable judgment, not manifestly erroneous, and we affirm it.

The decision to choose one of the five plats of surveys from which to set the new boundaries of ownership was based on careful examination of the evidence

11

and testimony of the witnesses who prepared three of the five plats of surveys. It was also not manifestly erroneous.

Mr. Alexander does not possess just, good title to the disputed tract of land. The physical description of the property he purchased does not sufficiently state what the boundaries are such that third parties would be on notice of his actual property boundaries. He, therefore, cannot meet the elements of acquisitive prescription by ten years of possession.

The judgment of the trial court is affirmed, and all costs of this appeal are assessed to the plaintiff, Caffery Alexander.

**AFFIRMED**.

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules—Courts of Appeal.