560 So.2d 676 (1990)
Morris E. McDANIEL, Plaintiff-Appellant,
v.
ROY O. MARTIN LUMBER CO., INC., Defendant-Appellee.
No. 88-1343.
Court of Appeal of Louisiana, Third Circuit.
April 18, 1990.
*677 Dauzat, Falgoust, Cariness & Bienvenu, Steve Bienvenu, Opelousas, for plaintiff-appellant.
Sandoz, Sandoz & Schiff, Lawrence Sandoz, Jr., Opelousas, for defendant-appellee.
Before FORET, STOKER and LABORDE, JJ.
STOKER, Judge.
This is a suit for treble damages filed by Morris E. McDaniel through his curator, Robert L. McDaniel, against the Roy O. Martin Lumber Co. for the wrongful cutting of timber on a tract of land along McDaniel's eastern boundary.[1] McDaniel alleges he has title ownership of the tract. Martin Lumber answered and pleaded ownership of the property through 30 years acquisitive prescription. The trial court held that neither party carried its burden of proving ownership of the property. McDaniel has appealed this judgment and Martin Lumber has answered the appeal.

ASSIGNMENTS OF ERROR
Plaintiff-appellant assigns as error the following:
The trial court erred in concluding that the plaintiff did not establish record title to the disputed property and further erred in denying plaintiff's claim for the wrongful cutting of the timber.
Defendant answered the appeal and assigns as error the following:
The trial court erred in denying defendant's claim to acquisition by 30 years acquisitive prescription of that portion of the 31.28-acre tract located within the fence line and the painted lines maintained by the Turner Lumber Company, ancestor in title, and by Roy O. Martin Lumber Co., Inc., for a period in excess of 30 years.

OPINION
Initially, we must note and clarify the precise property at issue in this case. Plaintiff's petition and defendant's answer refer to a 31.28-acre tract lying north and south of Bayou Rouge between plaintiff's "apparent east boundary" and the section line which forms defendant's west boundary. Bayou Rouge bisects the tract from east to west. Plaintiff presented his case to establish title ownership of this entire tract. However, the parties later agreed at trial that their dispute involved only that part of the tract lying south of Bayou Rouge, or about 18 acres. Apparently, no timber was cut by defendant in that part of the tract lying north of Bayou Rouge. Therefore, plaintiff cannot claim damages for the northern section of the tract and plaintiff's ownership of the northern section is not placed at issue in this case.
Consequently, the only property at issue in this case is that part of the 31.28-acre tract lying south of Bayou Rouge. We express no opinion as to the ownership of that portion of the 31.28-acre tract lying north of Bayou Rouge.

McDANIEL'S CLAIM TO OWNERSHIP
McDaniel's claim to ownership of the 31.28-acre tract is based on his title and two surveys which were introduced into evidence, the Tate survey and the Fontenot survey. We have attached to this opinion as Exhibits A and B sketches which are adaptations of the Tate survey and the Fontenot survey.
Plaintiff's title sets forth the following property described, in pertinent part, which allegedly includes the disputed tract:
"A certain tract of land, partly cleared, but principally uncleared, together with *678 all the buildings and improvements thereon, more or less, lying on both sides of Bayou Rouge and situated partly in the southeast corner of the southeast quarter of Section Twenty Six (26) and partly in the northeast corner of the northeast quarter of Section Thirty Five (35), all in Township Three (3) South, Range Five (5) East, St. Landry Parish, La., and bounded as follows: North by property of St. Landry Bank & Trust Company; South by property of Mrs. May Hawkins Neal, widow of J.A. Neal; East partly by property of W.G. Ellerbee, and partly by property of Turner Lumber Company; and West partly by property of Estate of Richard D. Lamson, deceased, and partly by a tract of approximately one hundred acres of land owned by Morris Edward McDaniel and acquired by him from Richard D. Lamson on March 27, 1953, by deed recorded as No. 331247 in Conv. Book A-10 at page 31 of the Recorder's Office of the Parish of St. Landry, La.
"The property now being described is Lot Three (3) of the Plat of Survey and Subdivision of the property of the joint estates of Ernest M. Monteilh, et ux., Claudia Villerette, both deceased, which said plat was made by Albert Tate, C.E., on April 15, 1922, and is attached to and made part of the Act of Conventional Partition in Kind of said joint estates, which said partition and plat are recorded as No. 91101 in Conv. Book E-5 at page 200 et seq. of the aforesaid Recorder's Office."
(Emphasis added)
The 1922 survey by Albert Tate illustrates the partition of the E.M. Monteilh estate into three 127-acre lots. In 1941 McDaniel purchased from Aras McGee Lot 1, lying within Sections 27 and 34 of T3S R5E at the western end of the Monteilh estate. In 1953 McDaniel bought from Richard Lamson 100 acres of Lot 2, lying within Sections 26 and 35 of T3S R5E in the middle of the Monteilh estate. The 27 acres in Lot 2 lying north of Bayou Rouge were not conveyed to McDaniel. In 1959 McDaniel purchased from Roscoe Baham Lot 3, lying within Sections 26 and 35 of T3S R5E at the eastern end of the Monteilh estate. The east boundary of Lot 3 is in dispute.
The three lots purchased by McDaniel from the Monteilh estate contain 354 acres according to the titles. However, it is unclear from the Tate survey whether the east boundary of Lot 3 lies on the north-south section line between Sections 26 and 25 and Sections 35 and 36 or whether it lies about 515 feet west of and parallel to the section line. The area between the section line and the alleged boundary line (515 feet west of the section line) is a 31.28-acre tract. The southern portion of this tract, or the portion lying south of Bayou Rouge, is the object of this dispute.
A subsequent survey was made in 1982 by Paul Fontenot of all the land then owned by Morris McDaniel. The Fontenot survey encompasses the original three lots from the Monteilh estate purchased by McDaniel, labeled Tract 1 and Tract 2, plus two smaller parcels to the west of and adjoining Tract 2, which are labeled Tract 3 (12.93 acres) and Tract 4 (17.07 acres). The disputed tract, which adjoins Tract 1 on the east, is labeled Tract 5.
The Fontenot survey shows the east boundary of Lot 3 of the Tate survey (or Tract 1 of the Fontenot survey) as lying 515 feet west of and parallel to the section line. The west boundary of Lot 1 of the Tate survey is the same as the west boundary of Tract 2 of the Fontenot survey.
The Fontenot survey contains an apparent discrepancy in that it appears to state that Tract 1 contains 383.26 acres, whereas it also states, somewhat ambiguously, that the property contained in the 1922 Tate survey, composed of three lots totaling 381 acres, is the same property contained in Tracts 1 and 2 of the Fontenot survey, excluding the 30-acre tract. Apparently the "30 acre-tract" refers to the 27 acres north of Bayou Rouge which was excluded from the sale of Lot 2 to McDaniel by Richard D. Lamson. (Tr. 154)
At trial, Paul Fontenot testified that he had intended to indicate that all of McDaniel's property (Tracts 1, 2, 3 and 4) contains 383.26 acres and that Tracts 1 and 2, comprising *679 the Tate survey property minus 27 acres, contain 353.26 acres. Therefore, Tracts 1, 2, 3 and 4 together contain 383.26 acres.[2] (As stated above, Tracts 3 and 4 contain 30 acres.)
The crux of McDaniel's argument at trial is that, according to the Fontenot survey, Tract 1 alone contains 383.26 acres. Therefore, McDaniel must own the 354 acres purchased in Lots 1, 2 and 3 (Tracts 1 and 2) plus the additional 31.28 acres in the disputed tract. Therefore, the east boundary of Lot 3 (or Tract 1) is on the section line rather than 515 feet west of it. McDaniel also urges that the wording of the conveyance by which he acquired Lot 3 shown on the Tate survey conveys by its own terms property having its east boundary along the section line.
We disagree. We find that plaintiff's titles to Lots 1, 2 and 3 clearly convey only 354 acres. Therefore, the Fontenot survey apparently mislabeled the acreage contained in Tract 1 as being 383.26 acres, as explained by Paul Fontenot at trial. We also disagree with plaintiff's contention that the property description in his title gives him property with an eastern boundary on the section line. The sole language relative to sections is that the property was situated partly in the southeast corner of the southeast quarter of Section 26 and partly in the northeast corner of the northeast quarter of Section 35. Such language does not mean that the eastern boundary was along the section line. The description also lists the owners of the properties bounding Lot 3. Significantly, one of the owners listed as being east of Lot 3 is Turner Lumber Company, one of defendant's ancestors in title. Even if plaintiff's argument should be accepted, he cannot prevail as to his view of the meaning of the wording of the property description. This is because the Tate plat is incorporated into the description and it governs. The Tate survey does not indicate that the east line of Lot 3 was along the section line.
It is settled law that where there is conflict between the written description in a deed and an attached plat, the plat of survey will control and govern the conveyance. Barker v. Quality Builders, Inc., 503 So.2d 1170 (La.App. 3d Cir.1987); Bernard v. Somme, 501 So.2d 893 (La.App. 5th Cir. 1987); Barbera v. Midway Land Co., Inc., 453 So.2d 645 (La.App. 5th Cir.), writ denied, 460 So.2d 609 (La.1984). Plaintiff failed to carry his burden of proving title ownership of the disputed tract (that portion of Tract 5 south of Bayou Rouge).
At trial, during defendant's presentation of its case, the trial court stated that it did not find either party's title included the disputed tract. At this point, plaintiff told the trial court that his position was that he had taken corporeal possession of the tract. On appeal, plaintiff has argued facts which tend to establish his possession of the tract with intent to possess as owner. However, plaintiff has failed to specifically plead acquisitive prescription either at trial or on appeal in accordance with LSA-C.C. art. 3452. Therefore, we cannot consider his argument for acquisitive prescription. Nevertheless, as we explain later, Roy O. Martin Lumber Co., Inc. prevails on the issue of acquisition by prescription. The judgment of the trial court holding that Morris E. McDaniel does not have title ownership of the disputed tract lying south of Bayou Rouge is affirmed.

MARTIN LUMBER CO.'S CLAIM TO OWNERSHIP
Martin Lumber Co. alleges that it has acquired the property lying south of Bayou Rouge, between McDaniel's east boundary and the section line (Martin Lumber's west boundary), through 30 years acquisitive prescription by tacking its possession to that of its predecessors. Martin Lumber stipulated at trial that its titles do not include this property.
Ownership of an immovable may be acquired by the prescription of 30 years without the need of just title or possession in good faith. LSA-C.C. art. 3486. The possession must be continuous, uninterrupted, *680 peaceable, public and unequivocal. LSA-C.C. art. 3476. A possessor must establish not only that there has been corporeal possession of the property for the required time, but also that there was a positive intent to take and commence possession of the property as owner. Miller v. White, 539 So.2d 1268 (La.App. 3d Cir. 1989).
For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed. LSA-C.C. art. 3487. In order for defendant to apply the principle of "tacking," it must prove that it and its ancestors exercised possession of the disputed tract up to a visible boundary since the tract is not included within its title. Miller v. White, supra; Fruge v. Lyons, 373 So.2d 220 (La.App. 3d Cir.1979). The nature of the land or the use to which it is destined governs the possession necessary to support prescription. Gibbs v. Gahagan Land & Timber Co., Inc., 520 So.2d 1035 (La. App. 3d Cir.1987), writ denied, 522 So.2d 565 (La.1988); Verret v. Norwood, 311 So.2d 86 (La.App. 3d Cir.), writ denied, 313 So.2d 842 (La.1975).
The evidence shows that the trees along the boundaries and corners of the disputed tract were marked with paint every 10 to 15 feet by Martin Lumber and by its predecessors in title and possession. Turner Lumber Co. possessed the tract since at least 1936 and R.H. Friedman, W.A. Moncrief and W.A. Moncrief, Jr. possessed the tract for about six months from 1976 to 1977. "ROM" is painted on some of the trees. There is also a fence, which is maintained by plaintiff, along the western boundary of the tract. Therefore, the boundaries have been maintained for over 30 years. Further, the timber was harvested in the late 1950s by Turner Lumber Co. and in 1987 by Martin Lumber Co.
Plaintiff contends that Martin Lumber has failed to establish the actual and real possession essential to its action. We disagree. Martin Lumber's possession of the property, along with that of its predecessors, has been commensurate with the nature of the land and the use for which it is suitable. Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952); General American Oil Co. of Texas v. Williams, Inc., 441 So.2d 1268 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1230 (La.1984); Southern Advance Bag & Paper Co. v. Broomfield, 73 So.2d 510 (La.App. 2d Cir.1954). The marking of the survey lines by McDaniel in 1982 was insufficient to interrupt Martin Lumber's possession. McIlwain v. Manville Forest Products Corp., 499 So.2d 1138 (La. App. 2d Cir.1986).
We also find that Martin Lumber has established an intent to possess the land as owner. Two of Turner Lumber Co.'s former supervisors testified that they had always believed that Turner Lumber owned the property in question and that was why they had marked the boundaries around it. Five of Martin Lumber's employees testified that they believed the disputed tract had been owned by Turner Lumber and was now owned by Martin Lumber. Keeping in mind that, under LSA-C.C. art. 3427, one is presumed to intend to possess as owner unless he began to possess in the name of and for another, we find that Martin Lumber has amply demonstrated an intent to possess the disputed tract as owner.
Therefore, we hold that Roy O. Martin Lumber Co., Inc. is entitled to ownership of the disputed tract, about 18 acres, by virtue of 30 years acquisitive prescription.

CONCLUSION
The judgment of the trial court is affirmed insofar as it holds that plaintiff-appellant, Morris E. McDaniel, does not have title ownership of the disputed tract lying south of Bayou Rouge. The judgment of the trial court is reversed insofar as it denied Roy O. Martin Lumber Co.'s claim to the property and judgment is hereby rendered ordering, decreeing and adjudging that Roy O. Martin Lumber Co., Inc. is owner of that tract of land situated in St.
*681 Landry Parish, Louisiana lying within T3S R5E, Sections 26 and 35, containing about 18 acres, and bounded on the west by Morris E. McDaniel, on the north by Bayou Rouge, on the east by Roy O. Martin Lumber Co. and on the south, now or formerly, by Norma N. Hawkins Neal or assigns.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
*682 
*683 
NOTES
[1] Paragraph 5 of plaintiff's petition states that his claim is brought pursuant to LSA-R.S. 56:1476.1. The provision of law relied upon is now contained in LSA-R.S. 3:4278.1 B.
[2] The small discrepancies between the acreage figures in the two surveys were explained at trial as being due to the greater degree of accuracy in modern surveying equipment.