# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**11-5**


TOMMY G. HILLMAN

VERSUS

THOMAS M. ANDRUS, ET UX.


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 70840-B
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**MARC T. AMY
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Marc T. Amy and Phyllis M. Keaty, Judges.


**REVERSED AND RENDERED.**



**H. Kent Aguillard
Post Office Drawer 391
Eunice, LA 70535-0391
(337) 457-9331
COUNSEL FOR DEFENDANTS/APPELLEES:**
    Thomas M. Andrus
    Rachael Lea Berken Andrus

**Michael V. Matt
Post Office Drawer 191
Eunice, LA 70535
(337) 457-8260
COUNSEL FOR PLAINTIFF/APPELLANT:**
    Tommy G. Hillman

AMY, Judge

This suit arises from a dispute concerning property located in Evangeline Parish. The plaintiff filed a boundary action, seeking recognition of the boundary between his property and that of the defendants. While the defendants asserted that they owned the disputed property by virtue of their title, they also filed an exception of prescription, alleging that they acquired title to the property through possession of thirty years. After a hearing, the trial court granted the defendants' exception, finding that the defendants acquired the disputed land via a prescriptive period of thirty years. The plaintiff appeals. For the following reasons, we reverse and render.

**Factual and Procedural Background**

This case involves a dispute over the ownership and/or possession of a 0.94 acre parcel located in Evangeline Parish. The plaintiff, Dr. Tommy G. Hillman, filed this matter as a petition in boundary action and for damages in June 2009. Therein, he asserted ownership to the disputed tract via a 2007 cash sale from Robert D. Lucero and Michael P. Lucero.[1]

Dr. Hillman asserted that the defendants, Thomas and Rachael Andrus, were encroaching on the disputed tract from what Dr. Hillman contends was the Andruses'

---

[1] The record indicates that the sale included a total of three tracts, including the 0.94 acre tract at issue. An Act of Correction related to the sale describes the disputed 0.94 acres as follows:

> **TRACT 3**
> A certain tract or parcel of land containing 0.94 acres, more or less, located in the Southwest Quarter (SW/4) and the Northwest Quarter (NW/4) of Section 33, Township 6 South, Range 1 West, **Evangeline Parish, Louisiana**, and being more fully described on that certain Map of Survey Made for Robert D. & Michael Lucero dated December 21, 2006 and prepared by Ryan J. Fuselier, Registered Professional Land Surveyor, annexed hereto and made part hereof.
>
> **ACQUISITIVE HISTORY:** Being a portion of the same property acquired by Robert Dean Lucero and Michael Paul Lucero by Act of Cash Sale from Joseph Anthony Lucero dated August 23, 2004 and recorded as Original Act Number 537273 in Conveyance Book C295 at Page 685 in the Clerk of Court's Records for Evangeline Parish, Louisiana[.]

(Emphasis added.)

St. Landry Parish property, located to the south of the disputed property.[2] The record indicates that the descriptions relating to Andruses' property include Bayou Des Cannes[3] as a northern boundary.

Dr. Hillman asserted that, although the Bayou Des Cannes channel was rerouted to the north from its original channel prior to the Andruses purchase of the property, the Evangeline Parish and St. Landry Parish boundary remained at its historic location. He contended that no Evangeline Parish property was incorporated into St. Landry Parish by the re-routed Bayou Des Cannes.

The record reveals that the Andruses' presence on the area of the disputed property commenced in November 1977 with the purchase of a 2.07 acre tract, the description of which references only St. Landry Parish.[4] Thereafter, in 1994, the

---

[2] The evidence indicates that the 0.94 acre disputed property is a peninsular area of higher ground located between the current location of Bayou Des Cannes, to the north, and the former channel bed of Bayou Des Cannes, to the south. Testimony indicates that the area is, to varying degrees, inaccessible at various points in the year due to high water in the area. Both parties assert that they and their ancestors in title have used the area for recreational purposes, namely hunting and fishing. The property can only be accessed from the north through the existing Bayou Des Cannes or by a small weir extending from the north bank of the Bayou Des Cannes. Otherwise, the property could only be accessed by an area of high ground contained on the property of the landowner to the west of the Andruses' undisputed acreage.

[3] The bayou contains various titles and spellings in the record. Notwithstanding quotations, this opinion refers to the area as Bayou Des Cannes.

[4] The November 1977 Cash Sale describes the 2.07 acre tract, in part, as:

A certain tract or parcel of land, containing 2.07 acres, more or less, situated in the Southwest Quarter (SW¼) of the Northwest Quarter (NW¼) of Section 33, Township 6 South, Range 1 West, St. Landry Parish, Louisiana, together with all improvements situated thereon, which tract or parcel of land is more particularly described as beginning at a point 1,159.2 feet West of the Southeast Corner of the Southwest Quarter (SW¼) of the Northwest Quarter (NW¼) of Section 33, Township 6 South, Range 1 West; thence proceeding in a Northerly direction along the eastern boundary of Mike Courville tract a distance of 979 feet; thence proceeding in an Easterly direction a distance of 89 feet; thence proceeding in a Southerly direction along the West boundary of a certain two (2) acre tract owned by Ruby Peloquin Roy, et al a distance of 1050.0 feet; thence proceeding in a Westerly direction along Public Black Top Road a distance of 89 feet to point of beginning. Said property being bounded now or formerly as follows: **North by Bayou DeCannes**; South by Black Top road; East by two (2) acre tract owned by Ruby Peloquin Roy, et al; and West by Mike Courville and being the same property which

Andruses acquired an adjacent parcel,[5] providing them with the approximately 4 acre tract they owned at the time this matter was proceeding below.

In his petition, Dr. Hillman asserted that his purported 0.94 acre tract in Evangeline Parish and the property owned by the Andruses shared a "common boundary, namely the historical Evangeline/St. Landry Parish boundary line." Citing a dispute as to the location of the boundary line between their respective properties, Dr. Hillman requested that the court fix the boundary thereof and recognize his ownership of the 0.94 acres referenced in his 2007 cash sale description. Dr. Hillman also sought damages for the Andruses' alleged trespass.

The Andruses reconvened, ultimately asserting that the disputed property was contained within their property descriptions. Alternatively, Mr. and Mrs. Andrus sought a determination of ownership by acquisitive prescription. They contended that

_____

Robert Wayne Andrus acquired from Ruby Peloquin Roy, et al by Cash Sale dated November 17, 1976.

(Emphasis added.)

[5] An August 1994 Cash Sale describes Mr. and Mrs. Andrus's purchase as follows:

A certain tract or parcel of land, together with all buildings and improvements situated thereon, situated in Section 33, Township 6 South, Range 1 West, St. Landry Parish, Louisiana, containing two (2) acres, more or less; said property being more particularly described as beginning at the Southwest (SW) Corner of a certain 4.45 acre tract of land which Louis Roy, et al sold to Barney Andrus, Jr., et ux, on September 30, 1976, said sale being recorded in Conveyance Book O-20, at Page 84, as Original Act No. 602481, Clerk of Court Records, St. Landry Parish, Louisiana; from said point of beginning proceed in a generally Westerly direction along the West side of a blacktop road Eighty-one (81') Feet; thence in a generally Northerly direction a distance of 1,050 Feet; thence in a generally Northeasterly direction to the Western boundary of the land belonging now or formerly to Barney Andrus, Jr.; thence in a Southerly direction along the Western boundary of said land a distance of 1,105 Feet; said tract of land being bounded now or formerly as follows: On the **North by Bayou des Cannes**; on the South by a Blacktop road; on the East by Barney Andrus, Jr., et ux; and on the West by Robert W. Andrus; being the same property which Newman Louis Thibodeaux, et ux acquired from Louis Roy, et al by Cash Sale dated May 20, 1977, recorded on May 31, 1977 in Conveyance Book Y-20, Page 479, as Original Act No. 609207, records of St. Landry Parish, Louisiana.

(Emphasis added.)

they and/or their ancestors in title had maintained the 0.94 acres for thirty years and that this possession continued until Dr. Hillman filed this matter. In an amended reconventional demand, they asserted that the United States Army Corps of Engineers had redirected the course of Bayou Des Cannes eleven years before they purchased their property. They stated that after their purchase, it was their "intention to acquire property up to the present location of Bayou Des Cannes as it exists today and not only up to the bed of the old course of Bayou Des Cannes." The Andruses prayed for damages for emotional distress and a determination that they were entitled "to be maintained in possession permanently to the exclusion of all others, including [Dr. Hillman], and for all other general and equitable relief appropriate in this case." Finally, the Andruses asked that, if the trial court determined that their property extended into Evangeline Parish, their title would be reformed to show the extent of that ownership, "including any portion that lies in Evangeline Parish."

Subsequently, and now at issue in this appeal, the Andruses filed an exception of prescription wherein they alleged that they and their ancestors in title had possessed the disputed property in excess of fifty-nine years.

The trial court set both the exception of prescription and the trial on the merits on the same day. It ultimately found in favor of the Andruses, sustaining the exception of prescription due to thirty-year acquisitive prescription. Furthermore, the trial court found that the defendants had possessed the disputed property in excess of one year, to the exclusion of all others and were, therefore, "presumed to be the owners."[6] Therefore, the trial court's judgment declared the defendants to be the

---

[6] In reasons for ruling, the trial court remarked that the exception ruling turned on credibility and further stated that:

Having said all of that, though, when you look at the credibility issue, I believe that we cannot say that someone has to possess property totally, every day, and

4

completely. If that was the case, you know, I own hundreds of acres, if not more. And I'd have to be on that land every day . . . There's no way I can do it. I think that possession, you have to look at the situation and take each case on a case by case basis. This land is right behind the Andrus's house. They obviously have the most interest in this particular piece of property. They have the most motive to possess it in so far [sic] as I'm concerned. And the testimony was by the Andrus's that they possessed it in the sense that they used it regularly and frequently. They mowed it. What's the extent of the possession, and that's a very important point. And I agree with Mr. Matt [counsel for Dr. Hillman]. You have to look at the extent. I don't think you have to fence it in. There are many cases where they talk about homesteaders. Big timber companies around here have trouble with people building a house, cutting out part of their woodland, building a house. They possess that part. They don't possess the whole forest . . . They possess that part, and they gain title to it. According to Mr. Andrus's testimony, he mowed the whole .92 [sic] acres or the majority of it. He maintained that whole area. He said that Dr. Hillman's father or his representative mowed up to a line. He mowed from there on. There's an obvious boundary that's being protected. You look at the only evidence. What evidence do we have of adverse possession other than the possession that Mr. Andrus testified to, we've got Mr. Lucero, was the only testimony I heard. He went fishing and he supposedly took a very young child hunting. Now, he might have taken him hunting, but there wasn't a hell of a lot of hunting going on with a little kid like that. And I'm not at all saying Mr. Lucero's lying. That's not what I mean. But I look at it from this standpoint. Mr. Lucero had 75 acres more or less across the boundary . . . the bayou, had a lot more frontage on the north side, had access to the weir on the north side, and he said by his own testimony, "That's a great place for the kids to go 4-wheeler riding, hunting, fishing . . . It's a good recreational area." I believe him. It makes perfect sense to me. Why in the world would you leave that situation, walk across wet, slippery rocks, or drive all the way around, come through somebody else's property, and then go to a little .92 [sic] acre piece when you've got all that other land across the bayou? Now, he probably did it. I believe he did it, but I don't know that he did it that often to where it would alarm every one that, "Uh oh. Something's going on over here." Dr. Hillman testified, and I think very honestly, that he's going on that property. I believe him, but has he done anything to show, "Hey, that's my property. I'm the one that's owning it." What did he do? He put up a chain. Good move I think. He tore it down, I bet you. It's gone. What did Dr. Hillman do at that point, another good move in my opinion, he filed a suit. And that was real smart except for the fact that you came in so late in the game, 2008, cause you had bought it in 2007. If you believe him, since [19]77 he's been possessing it. That's not your fault. It's just the way the time fell. Mr. Matt did an excellent job in drafting the petition because if he'd of asked and said that you owned it, he'd of had to prove title but against the world – real hard to do. He also didn't do something else that worries me, and this is part of my reasons. He didn't say that Dr. Hillman was in possession of it. Again, I think very good lawyering, because I think Mr. Matt knew his boat would have been loaded trying to prove that Dr. Hillman was in possession of it. Cause if he'd of been [in] possession of it for one year, the law would presume that you're the owner. You hadn't had that opportunity, and he didn't have the proof to do it. Again, he did a smart thing. He went to boundaries, but the fact that he couldn't prove possession tells me somebody else was in possession. Back to the Andrus's . . . That's the logical place. That's the place that makes more sense. I have to determine credibility as I said from the beginning. When you look at that, all of the factors I've said, plus the stipulated Judgment where Dr. Hillman's father stipulated in open Court the Andrus's were the owners of that property. He gave them a right of way. He knew the Luceros were involved in this. He gave them a right of way to go to that property. If he didn't believe that the Andrus's had some

5

owners of the disputed property and dismissed the plaintiff's petition. The trial court

denied the parties' claims for damages.

Dr. Hillman appeals, assigning the following as error:

1.      The lower court erred in finding that Hillman did not have corporeal possession when (1) Hillman purchased the tract from the Luceros in 2007, (2) at the time of acquisition, the Luceros were in corporeal possession of the tract, (3) Hillman maintained the same boundary line (the Parish Line) as the Luceros, and (4) Hillman did the requisite acts of an owner in good faith.

2.      The lower court erred in finding that Andrus met the requisite elements for 30-year acquisitive prescription, considering that possession was not continuous, was interrupted, certainly not peaceable and was equivocal.

3.      The lower court committed error when it failed to set the boundary between Hillman and Andrus at the Parish line.

4.      The lower court erred when it failed to award trespass damages to Hillman.

**Discussion**

*Acquisitive Prescription*

The central component of the trial court's ruling was its determination that the

Andruses acquired the 0.94 acre disputed property through thirty-year acquisitive

prescription. We first consider Dr. Hillman's second assignment of error in order to

address this finding underlying the trial court's sustaining of the exception of

prescription.

The Louisiana Civil Code defines acquisitive prescription as "a mode of

---

claim on that property, why do that? It's an exercise in futility. Doesn't make sense. None of these things tracks logical possession. Because of all of that, I find that the possession of the Andrus's is more credible. I will sustain the Exception of Prescription.

And I'll go further that in the even[t] that it is reversed, I at least find that the Andrus's are in possession for a period of at least one year, and therefore, they're presumed to be the owner at this point. So, I'm saying thirty years. In the alternative, I'm saying one.

acquiring ownership or other real rights by possession for a period of time."

La.Civ.Code art. 3446. Further, Article 794 instructs that, in the event a party proves

acquisitive prescription, "the boundary shall be fixed according to limits established

by prescription rather than titles. If a party and his ancestors in title possed for thirty

years without interruption, within visible bounds, more land than their title called for,

the boundary shall be fixed along these bounds." However, the Civil Code requires

that the possessor, here the Andruses, have "corporeal possession, or civil possession

preceded by corporeal possession, to acquire a thing by prescription. The possession

must be continuous, uninterrupted, peaceable, public, and unequivocal." La.Civ.Code

art. 3476.

The Andruses asserted that they owned the 0.94 acre disputed property by

thirty-year acquisitive prescription, which is available without proof of just title[7] or

of possession in good faith, pursuant to La.Civ.Code art. 3486. For purposes of

acquisitive prescription in the absence of title, La.Civ.Code art. 3487 instructs that

"possession extends only to that which has been actually possessed." La.Civ.Code

art. 3487. Further, the possession of a transferor is "tacked" to that of a transferee if

possession has not been interrupted. La.Civ.Code art. 3442.[8] If a party seeks to

prove acquisitive prescription through "tacking," it must establish that it and its

ancestors exercised possession of the disputed property up to a visible boundary since

the subject property is not contained within its title. *McDaniel v. Roy O. Martin*

---

[7] "A just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated." La.Civ.Code art. 3483.

[8] Dr. Hillman states in brief that the Andruses did not claim acquisitive prescription through tacking. He refers to a portion of Mr. Andrus's testimony wherein he states that he was not relying on possession prior to his 1977 purchase of the property. Additionally, we note that the trial court's reasons for ruling indicate that it did not find acquisitive prescription through tacking. Instead, it discussed the prescriptive period in the context of the 1977 purchase of the property.

*Lumber Co., Inc.*, 560 So.2d 676 (La.App. 3 Cir. 1990). "The nature of the land or the use to which it is destined governs the possession necessary to support prescription." *Id.* at 680.

In this case, the Andruses, as the parties pleading acquisitive prescription, were required to bear the burden of proving all essential facts. *See Hooper v. Hooper*, 06-0825 (La.App. 3 Cir. 11/2/06), 941 So.3d 726, *writ denied*, 06-2823 (La. 1/26/07), 948 So.2d 177. Insofar as the trial court's ruling included findings that the moving party possessed the subject property for prescription purposes, these findings are factual and will not be disturbed on appeal unless they are manifestly erroneous or clearly wrong. *See Prince v. Palermo Land Co., Inc.*, 05-1399 (La.App. 3 Cir. 5/3/06), 929 So.2d 831.

However, and although the trial court explained that its decision was credibility based, this case is not resolved by reference to credibility. Instead, even accepting the testimony of the witnesses in favor of the Andruses, that evidence does not establish the requirements of La.Civ.Code art. 3476. Rather, Article 3476 requires that possession for acquisitive prescription purposes must be "continuous, uninterrupted, peaceable, public, and unequivocal." The Andruses' testimonies, at best, establish that they periodically went upon the land and maintained it to varying degrees. Periodically, too, their children went upon the land for recreational purposes.

Even if we were to view the evidence of the quality of the Andrus family's actions as constituting possession, which we do for analysis and discussion purposes, the evidence does not indicate that the possession was continuous, uninterrupted, or peaceable for a thirty-year period. Beginning with their presence on the property

8

through a purchase of a portion of their titled property in November 1977,[9] the thirty-year period of acquisitive prescription would have accrued in 2007. However, the Andruses' possession during this period was not continuous. The trial court erred in failing to recognize this evidentiary deficiency in the Andruses' burden of proof.

With regard to continuity, the Andruses claimed that they regularly went upon the land since their home place, contained on their titled property, was separated from the disputed tract only by the bed of the old Bayou Des Cannes.[10] Critically, however, the Andrus family moved from the property for a number of years. According to Mrs. Andrus, the family resided elsewhere from 1981 to 1987.[11] Although other individuals lived in their house during that period, no evidence existed regarding the extent these individuals may have "possessed" the property during that period. Mrs. Andrus's testimony, at best, assumed that these individuals possessed the totality of what she believed was the Andruses' property. As for her own family's presence on the disputed tract during this six-year period, she stated only that she was not "sure." The lack of evidence regarding this period of time,

---

[9] As stated earlier, the Andruses acquired an additional portion of their titled property in August 1994.

[10] As explained above, the Andrus family could only access the property by going upon the property of the landowner to the west and entering the disputed property through a portion of higher ground. Since 1996, that property has been owned by Dr. Hillman's father, C.G. Hillman. After his purchase, Mr. Hillman placed a fence along the border of his boundary, obstructing the Andruses' previous passage. After litigation ensued between Mr. Hillman and the Andruses, the parties entered into a consent judgment providing the Andruses with a servitude of passage over Mr. Hillman's property to access what was labeled as their property. Mr. and Mrs. Andrus refer to Mr. Hillman's acknowledgment of their ownership rights in this document. While this may relate to the openness of their use of the property, it is of little significance as to ownership of the property since Mr. Hillman has never claimed any ownership in the disputed property. Rather, the record contains no evidence that Dr. Hillman has ever acknowledged that the Andruses have an ownership interest in the property.

[11] Two of the Andrus children also testified regarding the family's absence from the property during this time period. Although there was some variation in the witnesses' testimony with regard to the time period the family was away from the area, it is clear that their presence on the disputed property was not continuous.

alone, precluded a determination that the Andruses possessed the property for a thirty-year period after their first presence on the property in 1977.[12]

For this reason, and even taking into account the trial court's credibility determinations, the trial court was manifestly erroneous in finding that Mr. and Mrs. Andrus acquired the disputed property by acquisitive prescription. Accordingly, we reverse the sustaining of the exception of prescription and render judgment denying that exception.

*Corporeal Possession*

The trial court did not speak directly to Dr. Hillman's ownership of the disputed property by virtue of his title. Instead, the trial court's factual findings addressed its determination that Mr. and Mrs. Andrus acquired the property by thirty-year acquisitive prescription *prior* to certain actions to keep Mr. and Mrs. Andrus from the property. The trial court determined that actions taken by Dr. Hillman in 2008 were too late to interfere in their possession.[13] In his appeal, Dr. Hillman contests the trial court's determination that he and his ancestors in title, the Luceros,

---

[12] Notwithstanding this deficiency of evidence as to continuity of possession, the record contains other evidence contrary to a finding that the Andruses peaceably possessed the disputed tract for thirty years after their 1977 move onto the property. Mr. Andrus acknowledged that he received a claim disputing his ownership by a 2004 letter. Robert Lucero, one of Dr. Hillman's ancestors in title, testified that he once instructed Mr. Andrus to stay off the disputed tract in 2002. After he later saw Mr. Andrus on the property, he contacted an attorney to officially notify Mr. Andrus of his claim. Dated June 9, 2004, the letter is included in the record and details the Luceros' 2002 acquisition of the property and their claim regarding the parties' property boundaries. It instructs that: "My clients exercise possession and control of the tract and hereby inform you to cease and desist in any attempt at use of their property, or making any claim to same, and that your simple presence on same will be considered criminal trespass and will be pursued to the full extent of the law." Mr. Andrus acknowledged receipt of the letter, stating that he simply threw it away.

[13] We note that the trial court factually erred in determining that all of these actions were subsequent to the point in time at which it found that the Andruses acquired the property by thirty-year acquisitive prescription. It is true that, like his precedessor in title, Dr. Hillman prompted his attorney to notify the Andruses by letter of his ownership of the tract. The letter was not sent until 2008, after the 2007 time period when the thirty-year period would have ended. However, even presuming the Andruses began possessing the property in November 1977, Dr. Hillman testified that he erected a chain with a no trespassing sign after his purchase of the property in July 2007.

did not have corporeal possession of the property so as to undermine the Andruses' acquisitive prescription claim. Above, we have found that the trial court erred in finding that the Andruses satisfied their burden of proof on the prescription claim. Thus, the assignment addressing this underlying factual finding is rendered moot by this decision.

*Boundary Action*

After the close of evidence on the exception of prescription, Dr. Hillman presented evidence in support of his own petition in the boundary action. He now asks that this court "fix the boundary line between Hillman and Andrus at the boundary between the Parishes, thus establishing Hillman as the owner of the 0.94 acre tract."

With regard to a boundary action, Louisiana Code of Civil Procedure Article 3693 provides that, after considering the evidence submitted, the court "shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties." Further, La.Civ.Code art. 792 provides that: "The court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession." In the event both parties rely on their respective titles only, La.Civ.Code art. 793 instructs, in part, that "the boundary shall be fixed according to titles." Finally, and in the event a party is able to prove acquisitive prescription, "the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds." La.Civ.Code art. 794.

As addressed above, La.Civ.Code art. 794 is inapplicable as the Andruses failed to meet their burden of proving acquisitive prescription. However, they also entered their own property description(s) into evidence and asserted, by virtue of their reconventional demand, that they held title to this property. Thus, we consider La.Civ.Code art. 793 to determine whether the boundary must be "fixed" for purposes of the boundary action.

Dr. Hillman's title very clearly includes the disputed property. His property description placed the property in Evangeline Parish and, importantly, referenced an annexed survey. The survey highlights the 0.94 acre disputed property as the property sold/purchased in the 2007 cash sale from the Luceros. The survey shows the disputed tract is bordered to the south by the "surveyed centerline" of the old Bayou Des Cannes channel. This sale was placed into the record with an "Evangeline Parish Record Page" attached to demonstrate its filing into the registry of the court. *See* La.Civ.Code art. 3483.

In contrast, the Andruses' descriptions only reference property in St. Landry Parish. They are arguably ambiguous to the extent that they describe the northern boundary as Bayou Des Cannes. The Andruses contend that the measurements contained in the description permitted a finding that their two tracts were bordered to the north by the existing Bayou Des Cannes, not its historical location. However, they presented no testimony or evidence establishing this northern border by the

measurements contained in their titles.[14] Neither did the Andruses present evidence that their northern border was, in fact, inside of Evangeline Parish.

While these titles are arguably conflicting, we do not find that the need for a more specific fixing of the border has been proven in this case. Instead, this case properly proceeded as one involving a claim for acquisitive prescription, not a boundary action. Accordingly, we do not further designate the boundary as requested by Dr. Hillman. We instead, find that Dr. Hillman's title is superior to that of Mr. and Mrs. Andrus and adequately establishes his southern border as identified in the survey annexed to the cash sale by which he acquired the property.

*Trespass*

Finally, Dr. Hillman seeks trespass damages for the loss of peaceable possession of his property. With regard to damages for trespass, this court has previously explained that:

> In an action for trespass, the plaintiff must show damages based on the result or the consequences of an injury flowing from the act of trespass. *Bell v. Sediment Removers, Inc.*, 479 So.2d 1078 (La.App. 3 Cir.1985), *writ denied*, 481 So.2d 1350 (La.1986). The damages must be proved by a preponderance of the evidence, and this burden of proof may be met by either direct or circumstantial evidence. *Id.* One who is wronged by a trespass may recover general damages suffered, including mental and physical pain, anguish, distress, and inconvenience. *Ard v. Samedan Oil Corp.*, 483 So.2d 925 (La.1986). Mental anguish does not result of necessity from a trespass or the encroachment on a persons' property. Even though mental anguish may be compensable, it must be proven with sufficient evidence. *Bell*, 479 So.2d 1078. However, mental anguish does not require proof that medical or psychiatric care was required as a result of the incident, but minimal worry and inconvenience should not be compensated. *Phillips v. Town of Many*, 538 So.2d 745 (La.App. 3 Cir.1989).

---

[14] On this point, Mr. Andrus testified that he had never "physically measured" the distance. However, once, "for curiosity sake," he used a "marking wheel" and measured the distance from the parish road in front of his home to the old bayou. In his opinion, the measured distance to that point was less than what he felt was described in the title and that, if he had gone the full distance described in the title, it would have been "to the new bayou." We do not find this adequate evidence to establish the Andrus boundary by distance.

*Lacombe v. Carter*, 07-1063, p. 4 (La.App. 3 Cir. 1/30/08), 975 So.2d 687, 690.

Although Dr. Hillman established trespass, we do not find that he proved entitlement to damages. In short, Dr. Hillman only owned this property for a short period of the time at issue in this case. The extent and/or type of trespass during that period of time is unclear under the evidence presented. Dr. Hillman has not presented evidence as to his inability to go upon or enjoy his property insofar as he testified regarding his regular use of it for recreational purposes since his purchase. He did not further present evidence regarding mental anguish.

This assignment lacks merit.

### DECREE

For the foregoing reasons, the judgment of the trial court is reversed. The exception of prescription filed by Thomas M. Andrus and Rachael Lee Berken Andrus is denied. Judgment is cast in favor of Tommy G. Hillman insofar as he is the owner of the disputed property by virtue of title, evidenced by the Cash Sale from Robert Dean Lucero and Michael Paul Lucero to Tommy G. Hillman dated July 18, 2007 and recorded July 23, 2007 as File No. 558659 in Evangeline Parish. Costs of this proceeding are assessed equally between the appellant, Tommy G. Hillman, and the appellees, Thomas M. Andrus and Rachael Lee Berken Andrus.

**REVERSED AND RENDERED.**

14